BOUSLOUGH ET AL., APPELLEES, *v.* SHINGLEDECKER, APPELLANT.

(No. 3606—Decided October 9, 1953.)

*Mr. Theodore R. Cubbison,* for appellees.
*Messrs. Carlyle & Carlyle,* for appellant.

PHILLIPS, J. On October 1, 1949, defendant, Shingledecker, and his son-in-law, Nagel, a college student, part-time embalmer and real estate agent, entered into a contract in writing, which provided:

"This agreement made and entered into this first

day of October, 1949, by and between H. L. Shingle-decker, 7219 Market St., Youngstown, Ohio and William E. Nagel, 407 West Liberty St., Hubbard, Ohio. Witnesseth

"Said H. L. Shingledecker having conducted a construction business under the trade name of 'Better Built Homes' is to be considered the sole owner of the above trade name, and by this agreement hereby transfers and assigns to the said William E. Nagel the right to use said trade name in connection with any residence or commercial construction done by him, and upon the termination of this agreement the said William E. Nagel agrees to reassign and retransfer all his right, title and interest to use said trade name of 'Better Built Homes' to the said H. L. Shingle-decker.

"The said William E. Nagel agrees to use the said trade name of 'Better Built Homes' exclusively in connection with any and all construction, either residence or commercial, advertising, banking and financing purposes during the life of this contract.

"Further, the said William E. Nagel agrees to and hereby engages and employs the said H. L. Shingle-decker as his exclusive sales representative for the duration of this agreement. Said employment is to be on the basis of a straight commission, based on one half the difference between the net construction cost, including office and advertising expense, and the sales price.

"The said William E. Nagel shall have the sole right to determine and set the sales price of each construction contract made and shall have full and complete charge of and shall assume sole responsibility of construction contracts entered into as well as of subcontractors and materialmen.

"The said H. L. Shingledecker shall turn over to the said William E. Nagel all moneys collected by him in connection with any and all sales for construction made by him. If so requested, the said William E. Nagel shall furnish to the said H. L. Shingledecker a full and complete itemized account of the net construction cost of each contract job, and who shall have the right to examine all records and books pertaining to any and all construction jobs, at all reasonable hours, with the understanding that any information obtained therefrom shall be treated in a confidential manner.

"The said H. L. Shingledecker shall be furnished with a key to any and all jobs under construction, for the purpose and right to show same to any prospects, in furtherance of his responsibility for making sales.

"It is the sole intention and purpose of this agreement to create a relationship of principal and agent. Neither principal or agent has any responsibility except as herein stated and provided.

"In witness whereof we have hereunto set our hands and seals this first day of October, 1949.

"Signed in the presence of:
Patricia Nagel        William E. Nagel
Sara Ellen Shingledecker   W. L. Shingledecker."

As the result of a meeting of plaintiffs and Nagel at the home of mutual friends on October 25, 1950, plaintiffs executed the following written agreement for the construction of a dwelling house:

"This agreement, made and entered into this 25 day of April 1950 by and between Emerson M. and Geraldine L. Bouslough, 3729 Erie St., the owner, and Better Built Homes, 1705 Market St., contractor.

"Witnesseth, that said contractor agrees to erect and complete said building; the work to be done in a good workmanlike manner; materials furnished ac-

cording to plans and specifications, for the sum of ten thousand two hundred dollars ($10,200).

"Said owner hereby agrees to pay to the said contractor the above amount, payable as follows:

"$300 W. E. N. When the contract is signed.

$............ When roof is on and completed.

$............ When plastering is completed.

$............ When all terms of contract are completed, and before owner takes possession.

"The owner hereby certifies that they is [sic] the owner of said land, free from all incumbrances, except none. If there is any increase, either in labor or material costs between the date of this contract and within ten days after the loan is approved, such increase shall be added to the above contract price.

"Under this contract the contractor agrees to install a maximum of fifty (50) feet of sewer, water and gas lines to a maximum depth of nine (9) feet. However, said sewer, water and gas lines must all be installed from either the front or rear of lot.

"If any rock is encountered in the excavation for the basement, sewer, water or gas lines, an extra charge will be made.

"An extra charge will be made for any trees to be removed.

"Any dirt necessary to be removed will be so done at the expense of the owner.

"The owner shall, during the progress of the work and until final settlement, maintain insurance on the same against loss or damage by tornado and fire; the policy to cover all work and material as furnished, and made payable to the owner, contractors and materialmen as their interests may appear. The provisions of this contract shall be subject to the benefit of all materialmen and subcontractors whose claims are not

paid when due, and if desired, the owner may require the contractor to furnish a complete release of all liens before final settlement.

"It is further agreed that said owner shall not be entitled to possession of said property until the entire contract price shall have been paid to said contractor, including all extras. Taking possession of building by owner shall constitute an acceptance of all the contractor's obligations.

"The said parties for themselves, their heirs, successors, executors, administrators or assigns, do hereby agree to the full performance of the covenants herein contained.

"In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

"In the presence of:      Emerson M. Bouslough
*Owner*   Geraldine L. Bouslough
*Contractor*   Better Built Homes
William E. Nagel.''

Plaintiffs paid $829.38 in excess of the stated contract price to complete the construction and obtain possession of such dwelling, for the recovery of which amount they sued Shingledecker and Nagel in the Court of Common Pleas.

Having been adjudicated a bankrupt, Nagel was dismissed as a party defendant in the trial court at the close of all the evidence.

The jury returned a verdict for plaintiffs for the amount prayed. The trial judge overruled the motion of Shingledecker for a new trial, and entered judgment for plaintiffs on the verdict of the jury, from which judgment Shingledecker appealed to this court on questions of law.

It is plaintiffs' principal contention that Shingle-

decker and Nagel were partners doing business as Better Built Homes; that the contract to which reference is made was made with them as such; and that, accordingly, Shingledecker is liable as a partner for payment of the amount sought.

It is the contention of Shingledecker, in general, that he was Nagel's employee as is shown by the evidence and stated terms of the contract executed by them, and that, accordingly, he is not liable for payment of the amount sought by plaintiffs.

In addition to the agreement executed by Shingledecker and Nagel, there is evidence that plaintiffs' contract and all others were subject to approval by Nagel alone, in whose name, as well as that of Better Built Homes, all bank accounts were carried, and who alone signed all checks, procured all loans and did all financing in connection with construction by Better Built Homes, and who alone could bind Better Built Homes, in whose profits or losses Shingledecker, who never claimed a partnership, did not share, and whom there is no evidence Nagel represented to be a partner in Better Built Homes, notwithstanding any agreement between the parties intended to create such a relationship.

Likewise there is evidence that Shingledecker represented himself as a partner of Nagel and Nagel considered himself Shingledecker's partner in Better Built Homes, for Nagel testified "it was my knowledge that we were sharing equally in business, that we were a partnership"; and that Shingledecker and Nagel each invested $500 in the project. Shingledecker contended that he gave Nagel the $500 he contributed as a gift, and that any profits would be divided equally. The jury had the right to consider the fact that Nagel and Shingledecker each contributed $500 to the enterprise known as Better Built Homes.

Competent evidence from which the jury might determine that a partnership existed between Nagel and Shingledecker appears in the record. For a time the office of Better Built Homes was in the home of Shingledecker, for which he neither received nor demanded any rent from Nagel. Subsequently, Better Built Homes acquired offices at 1705 Market Street, Youngstown, Ohio, where there were two desks, at least one of which, together with a typewriter, was owned by Shingledecker, and where contract forms supplied by him were found. There is evidence that Shingledecker figured the price estimates for the various building contracts, sold some of the houses, saw to the delivery or nondelivery of materials on the job, secured construction and permanent financing loans, and inquired as to the nondelivery of materials by Boardman Supply Company, claiming that company had promised him delivery thereof. There is evidence that he ordered employees of Better Built Homes to do or not to do material acts concerning their work, in one instance requiring a workman to remove studding and to enlarge the kitchen in one of the dwellings being constructed by Better Built Homes; and that when complaint was made to him about the fireplace in that home he told the mason about what could be done with the fireplace, and that it would have to be changed, and pursuant thereto the fireplace was rebuilt. Also there is evidence that he assumed authority to and did renegotiate contracts entered into by Better Built Homes, and in one instance agreed to pay a Mr. Buser the sum of $319.50 over and above the original contract price, Shingledecker initialing the change in the contract price; and that long prior to the time plaintiffs executed the contract to which reference has been made Shingledecker had discussed with plaintiffs the erection of a dwelling house.

' In view of Nagel being adjudicated a bankrupt, we think the jury could properly find that the written agreement between him and his father-in-law, Shingledecker, was merely one whereby Shingledecker sought to leave the impression that he was not a partner when in fact he continued to remain such throughout the operations conducted by him and Nagel under the trade name of Better Built Homes.

In our opinion the evidence, which it is not necessary to detail at greater length, is such as to present a question for the determination of the jury as to the existence of a partnership between Shingledecker and Nagel; and we can not disturb the verdict of the jury and the judgment of the Court of Common Pleas on the ground they are against the manifest weight of the evidence or contrary to law in this respect.

The trial judge charged the jury in part as follows:

"A partnership is a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportion. Each member of a partnership acting within the scope of the business of the partnership acts for all and is bound by the acts of all. Partners are joint principals in every partnership transaction, and each partner as a joint obligor is individually liable for the entire partnership obligation. Now that is a partnership and its obligations. The question you have, and you must bear this in mind: Do the facts here developed, as you find them from this evidence, show there was such a partnership at the time in question which included the defendant H. L. Shingledecker as one of its partners?

"To constitute a partnership in the name Better Built Homes as between H. L. Shingledecker and William E. Nagel as of April 25, 1950, the evidence must

show by its greater weight that these persons were jointly interested in the business in which the contract of the plaintiffs was included, sharing the profits and the losses between them, and in which each had express or implied authority to bind the other. If that does appear by the greater weight of the evidence, that would render them each liable for any liabilities incurred on account of such business in connection with the contract with the plaintiff. If it does not appear, by the greater weight of the evidence, then your verdict would simply be for the defendant.

"The best considered and less objectionable test of partnership is that of a community of interest in the profits of a business or transaction as principal.

"But this test is valuable as a rule chiefly because it evinces a relationship between the parties, where each may reasonably be presumed to act for himself and as agent for the others, and to that extent establishes the fact that the liability was incurred on the authority of all so participating in the profits. Participation in the profits is not regarded as a rule so uniform and unrelenting as to be unjustly applied. The true test of a partnership is left to be that of the relation of the parties as principal and agent, and if you find from the evidence that the relation of principal and agent existed between the two defendants, that the one acted in the business for and on behalf of the other, by such acts they would have incurred a joint liability, and you may then find that a partnership existed between them.

"There can be no partnership between parties unless there is an agreement between them constituting the relation between them into a partnership entity. The contract may be an express one in writing containing all the terms and conditions thereof, or it may be partly in writing and partly by oral agreement en-

tered into at the same time as the writing or afterwards. Or, like other contracts which the law does not require to be in writing, a contract of partnership may be proven by circumstantial evidence, that is, by showing acts and conduct of the parties from which the fact may be inferred that the parties have agreed to become partners. It must be made to appear from such acts and conduct of the parties that there was an agreement to share the profits as well as the losses of the business enterprise, both these elements being essential to constitute a partnership.

"Hence if parties engage in a joint business enterprise, each putting in labor or capital or both, with an agreement to share the profits and losses as such, and with implied or express authority of each to bind the other, such relation constitutes in law a partnership, whatever the parties may call themselves."

With reference to this assigned ground of error, Shingledecker contends:

"The court's charge completely ignored the provisions of the 'Act' in that under G. C., Sec. 8105-6 provides that the partners must be co-owners and under G. C., Sec. 8105-7, 4(b), the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment: (b) as wages of an employee * * *.

"Correct as may have been the trial court's charge covering the law of partnership as it existed before the enactment of the Uniform Partnership Act, it was prejudicially erroneous in that it did not instruct the jury on those two important phases of the law as contained in the 'Act,' but left the matter entirely to speculation and conjecture."

It is observed that in response to the question of the trial judge, "have I omitted anything or been in

error, gentlemen?," counsel for defendant responded, "nothing your honor."

Viewing the charge of the trial judge in its entirety in the light of the facts presented, we reach the conclusion that the trial judge did not err to the prejudice of Shingledecker in the general charge in the respects urged.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH, P. J., and NICHOLS, J., concur.