OPINION
{¶ 1} In this appeal, appellants, A-Custom Builders, Inc., Mario Medancic, Marija Medancic, Mladen Medancic, and Karoline Medancic, appeal from a February 19, 2004 judgment entry of the Geauga County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} This matter has an extended procedural history. On August 31, 1992, appellants ("buyers") and appellees ("sellers"), Robert Mayer, Marcia Mayer, William Mayer, and Mary Beth Mayer, entered into a purchase agreement for real estate. Pursuant to the purchase agreement, sellers were to receive $930,000 from buyers in consideration of two parcels of land labeled as 3a and 5a.[1] Parcel 3a was a sub-lot consisting of 1.5 acres of land, and parcel 5a was composed of 164 acres of unsubdivided developmental land.
 {¶ 3} The purchase agreement set forth a payment schedule which required buyers to make payments on specific dates. Following sellers' receipt of a $150,000 down payment, parcel 3a was transferred to buyers. Buyer, Mario Medancic, subsequently constructed his home upon the sub-lot, parcel 3a. Buyers then paid $25,000 toward the first scheduled payment of $50,000. However, buyers experienced financial difficulties and made no further payments. As a result of buyers' inability to pay, the parties executed a new purchase agreement on June 20, 1996. The new purchase agreement terminated the original purchase agreement and required buyers to pay $865,000 in consideration for the parcels of land.
 {¶ 4} When buyers failed to comply with the new purchase agreement's payment schedule, sellers filed three separate foreclosure complaints in the Geauga County Court of Common Pleas. All three complaints sought monetary damages and foreclosure of mortgage. In response to sellers' complaints, buyers counterclaimed against sellers for breach of contract. The trial court ultimately consolidated these claims.
 {¶ 5} Following a bench trial, the court issued two separate judgment entries. The judgment entry disposing of buyers' counterclaim was modified by the trial court in a nunc pro tunc judgment entry on October 3, 2000. The October 3, 2000 judgment entry rescinded the portion of the purchase agreement for unsubdivided developmental land and ordered sellers to reimburse buyers for any money paid for such land. The trial court stated:
 {¶ 6} "Accordingly, the agreements, to the extent that they representpurchase of unsubdivided acreage for development, should be rescinded, and the monies paid therefor in the sum of $148,000 ($175,000 [$150,000 down payment plus the $25,000 partial payment] plus $3,000 paid less $30,000[for Marion (sic) Medancic's residence] refunded to A-Custom Builders, Inc., plus interest at ten percnet (sic) (10%) per year from the date of judgment." (Emphasis added.)
 {¶ 7} Buyers previously appealed the October 3, 2000 judgment entry inMayer v. Medancic (Dec. 21, 2001), 11th Dist. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, 2001 WL 1647119. The pertinent assignment of error stated:
 {¶ 8} "The Court erred in subtracting $30,000.00 from the $178,000.00 due [buyers] from [sellers]." Id. at 3.
 {¶ 9} In that appeal, buyers failed to submit a transcript of the trial court proceedings with this court and offered no other evidence demonstrating a mathematical error. Although buyers offered no such evidence, this court, in the interest of justice, reviewed the merits of their claim. Id. at 5. Upon review, we found that the trial court properly rescinded those portions of the purchase agreement regarding the unsubdivided developmental land of parcel 5a and appropriately ordered sellers to reimburse any money paid by buyers for such land. Nevertheless, we explained, "for reasons that are not reflected in the [October 3, 2000] judgment entry, the $178,000 paid by [buyers] was reduced by $30,000, for a final total of $148,000. Presumably, the $30,000 represents the amount paid by [buyers] to [sellers] for a sublot, while the $178,000 represents the amount paid by buyers to sellers for certain unsubdivided acreage.
 {¶ 10} "Because the foregoing analysis engages in a certain amount of speculation on our part, we choose to refrain from entering judgment on this issue. Instead, we remand this issue to enable the trial court to clarify and specify why it subtracted $30,000 from $178,000, and/or recalculate this award on the counterclaim for breach of contract." Id. at 6.
 {¶ 11} Following our decision, the trial court issued a new judgment entry on March 21, 2002. The March 21, 2002 judgment entry added $30,000 to the $148,000 reimbursement total of the October 3, 2000 judgment entry, for the sum of $178,000. The trial court gave no explanation as to why this addition was made.[2]
 {¶ 12} Sellers filed a notice of appeal from the March 21, 2002 judgment entry, arguing that the trial court erred in adding $30,000 to the $148,000 total. After examining the record, we concluded that the court's addition of $30,000 was apparently against the manifest weight of the evidence. Mayer v. Medancic, 11th Dist. Nos. 2002-G-2431, 2002-G-2432, and 2002-G-2433, 2005-Ohio-5355, at ¶ 43 ("Mayer II"). However, we expressly determined that, because the trial court was in a better position to allocate the reimbursement, and because the trial court was unable to review the transcript on our previous remand, this matter should be remanded again for the trial court to examine the transcript and determine the reimbursement amount in light of the transcript. Id. at ¶¶ 44-45.
 {¶ 13} On February 19, 2004, the court issued a judgment entry which recalculated its previous order of March 21, 2002, and determined that "[sellers] shall pay [buyers] the sum of $148,000." The $148,000 sum was the result of the court again subtracting $30,000 from the $178,000 total. In doing so, the trial court stated that it agreed with this court's analysis of the facts in Mayer II, wherein we determined that without a subtraction of $30,000, buyers would be reimbursed for parcel 3a and retain ownership of this parcel for no consideration.
 {¶ 14} From this judgment, buyers filed a timely notice of appeal and now set forth the following assignment of error for our consideration:
 {¶ 15} "The Trial Court erred in awarding damages in Journal Entry on Amended Counterclaim dated February 19, 2004 by reducing its order so that [sellers] repay [buyers] $148,000.00 plus the supervision fee of $25,000 instead of the previously ordered $178,000.00 plus the supervision fee of $25,000.00."
 {¶ 16} Buyers' sole assignment of error argues that the trial court miscalculated by subtracting $30,000 from the $178,000 total. Specifically, buyers maintain that this subtraction resulted in a double payment for parcel 3a. In short, buyers contend that the court's calculation was against the manifest weight of the evidence. We disagree.
 {¶ 17} Whether a lower court's judgment is against the manifest weight of the evidence is a factual issue. Buck v. Canacci (Nov. 21, 1997), 11th Dist. No. 96-L-185, 1997 Ohio App. LEXIS 5236, at 4. Accordingly, because the trier of fact is in the best position to view the witnesses and their demeanor, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Hts., 88 Ohio St.3d 7, 2000-Ohio 258.
 {¶ 18} It is well established that "[j]udgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings."State ex rel. Celebrezze v. Environmental Enterprises, Inc. (1990),53 Ohio St.3d 147, 154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Karches v.Cincinnati (1998), 38 Ohio St.3d 12, 19.
 {¶ 19} At the outset, we note that buyers fail to set forth any additional evidence from the record that would contradict our factual analysis provided in Mayer II. A careful examination of the record also fails to produce contradictory evidence. Instead, buyers set forth an appropriate argument regarding an alleged mathematical miscalculation. But as will be shown, this argument is not well-taken.
 {¶ 20} In Mayer II, we noted that there was no evidence of a separate payment of $30,000 for parcel 3a. Id. at ¶ 17. Numerous checks, signed by buyers and made payable to sellers, were formally admitted at trial; however, the checks' proceeds were not applied toward a payment for parcel 3a. Id. at ¶ 20. Rather, these proceeds were used to pay for expenses such as legal costs, property taxes, soil tests, surveying, landscaping, and in consideration of separate parcels of developed land unrelated to either parcel 3a or parcel 5a. As a result, we concluded, "[b]uyers fail to set forth any evidence that they paid $30,000 inaddition to the $150,000 down payment and partial payments of $25,000 and $3,000." (Emphasis sic.) Id. at ¶ 21.
 {¶ 21} Testimony provided during the trial further revealed that parcel 3a was transferred in consideration for the $150,000 down payment. Buyer, Mladen Medancic, testified as follows on redirect examination:
 {¶ 22} "Q. Did Mr. Mayer [seller] go ahead and proceed with his end of the bargain as soon as you had that $150,000 [down payment]?
 {¶ 23} "A. Yes we gave him collateral.
 {¶ 24} "Q. And what did he do to perform his end?
 {¶ 25} "A. He transferred the lot [parcel 3a] to my dad's [Mario Medancic's] house immediately * * *."
 {¶ 26} Likewise, seller, Robert Mayer, testified that buyers made the $150,000 down payment, and that following the payment he transferred parcel 3a to buyer, Mario Medancic:
 {¶ 27} "Q. [on cross-examination of Robert Mayer]: Okay so the $40,000 check that Mladen didn't have here, you admit that you received?
 {¶ 28} "* * *
 {¶ 29} "A. Finally, we received to [sic] $150,000 [down payment] yes.
 {¶ 30} "* * *
 {¶ 31} "Q. One of the first things you did after this first contract was signed was to turn over a lot for Mario to build a house on, correct?
 {¶ 32} "A. That turned out to be part of the final agreement, that's correct. Part of the agreement in purchasing the property was — that made up the $930,000 correct."
 {¶ 33} To reiterate, the foregoing testimony demonstrates that parcel 3a was transferred to buyers in consideration for a portion of the $150,000 down payment.
 {¶ 34} That being said, the trial court's October 3, 2000 and February 19, 2004 judgment entries establish that only those portions of the purchase agreement regarding the unsubdivided developmental land of parcel 5a was to be rescinded. Accordingly, sellers retained ownership of parcel 5a, and buyers were to be reimbursed only for the money applied toward parcel 5a. The court did not rescind the portion of the agreement regarding the parcel 3a sub-lot, and buyer, Mario Medancic, maintained ownership of parcel 3a. Therefore, the trial court's judgment entries of October 3, 2000 and February 19, 2004, properly subtracted $30,000 to account for the transfer of parcel 3a to buyer, Mario Medancic. "Without this subtraction, buyers would be reimbursed for parcel 3a and retain ownership of this sub-lot for no consideration." Id. at ¶ 35.
 {¶ 35} In conclusion, the record demonstrates the following: (1) parcel 3a and parcel 5a were transferred to buyers in consideration for the $150,000 down payment; (2) the transfer of parcel 3a was not rescinded by the trial court; and (3) there was no evidence of an additional $30,000 payment made by buyers for parcel 3a. Buyers fail to present any evidence of record to oppose the foregoing facts, and our own thorough review of the record fails to reveal any contradictory evidence.
 {¶ 36} Accordingly, the trial court's February 19, 2004 judgment entry properly subtracted $30,000 from the total of $178,000 for the sum of $148,000. The court's calculation was not against the manifest weight of the evidence. Thus, buyers' sole assignment of error is without merit, and we hereby affirm the judgment of the trial court.
Ford., P.J. O'Neill, J., concur.
[1] Included in the purchase agreement were other various pieces of property that were to be transferred to buyers. These pieces of property, however, were separate transactions that were not part of the $930,000 purchase which is relevant to this appeal.
[2] The only insight made by the trial court as to why it made this addition was "that a mathematical error was made in the foregoing judgment entry."