OPINION
{¶ 1} This appeal arises from the Painesville Municipal Court. Appellant Jamie Bigham ("Bigham"), appeals from the judgment of the small claims division of the trial court awarding the sum of $750 plus interest at the rate of 10% per annum from the date of judgment, to appellee, Tom Brewster ("Brewster").[1]
 {¶ 2} Bigham and Brewster were acquaintances in the business of breeding and showing horses. Bigham owned a mare which she boarded at Brewster's training stable in Madison. Brewster and Bigham entered into an oral agreement for the breeding of Bigham's mare. Brewster had contacts in the horse industry, and located the owner of a stallion for the breeding of Bigham's mare and handled the entire transaction. Bigham, as the sole owner of the mare, signed a contract with the owner of the stallion to breed her mare to conceive the foal, for the price of $750. Brewster initially paid the $750 stud fee. Bigham's mare was bred, and became pregnant. The foal was born on February 12, 2004. Testimony established that sometime in March 2004, while Brewster was in the hospital, Bigham removed the mare and foal from Brewster's premises, leaving him a check in the sum of $750, as repayment of the stud fee paid by Brewster.
 {¶ 3} On March 12, 2004, Brewster filed a claim against Bigham for the sum of $750, alleging that Bigham owed him the additional sum of $750 as a "buyout fee" pursuant to an oral partnership arrangement between the parties.
 {¶ 4} The Painesville Municipal Court, by its magistrate, conducted a trial and rendered a $750 judgment, plus interest and costs, in favor of Brewster against Bigham. On April 8, 2004, a judgment entry adopting the magistrate's decision was filed. Thereafter, Bigham retained counsel, and on April 19, 2004, Bigham filed a motion for findings of fact and conclusions of law, pursuant to Civ.R. 52. On April 21, 2004, Bigham filed a motion for new trial, to set aside the magistrate's decision. On May 13, 2004, the magistrate filed a judgment entry of its findings of fact and conclusions of law. On June 1, 2004, the trial court overruled Bigham's motion for new trial and affirmed the magistrate's decision awarding judgment to Brewster. It is from that judgment that Bigham filed a timely notice of appeal and sets forth the following sole assignment of error for our review:[2]
 {¶ 5} "The trial court's judgment entry of June 1, 2004 is against the manifest weight of the evidence and contrary to law."
 {¶ 6} Bigham contends the court erred in failing to grant him a new trial because the manifest weight of the evidence did not support the judgment in favor of Brewster. Thus, the issue is whether the judgment was against the manifest weight of the evidence and, as a result, whether the court abused its discretion when it denied Bigham's motion for a new trial
 {¶ 7} Civ.R.59(A) addresses motions for new trial and provides in relevant part:
 {¶ 8} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 9} "* * *
 {¶ 10} "(6) The judgment is not sustained by the weight of the evidence[.]"
 {¶ 11} The grant or denial of a Civ.R. 59(A) motion for a new trial is committed to the sound discretion of the trial court and, on appeal, will not be reversed absent an abuse of discretion. Mannion v. Sandel,91 Ohio St.3d 318, 321, 2001-Ohio-47. An abuse of discretion connotes more than simply an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} In Ohio, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, this court must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact when determining whether a judgment is against the manifest weight of the evidence. Mayer v. A-Custom Builders, Inc., 11th Dist. No. 2004-G2-563,2005-Ohio-2083, at ¶ 17.
 {¶ 13} In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." Id., at ¶ 18, quoting, State ex rel. Celebrezze v. EnvironmentalEnterprises, Inc. (1990), 53 Ohio St.3d 147, 154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Karches v. Cincinnati (1998), 38 Ohio St.3d 12, 19.
 {¶ 14} In its judgment entry denying Bigham's motion for new trial the court stated: "* * * before the court are the Findings of Fact and Conclusions of Law. The court finds, after due deliberation and a review of the Findings of Fact and Conclusions of Law, the * * * Motion for New Trial is hereby overruled, and the previous judgment entry of April 8, 2004, is hereby affirmed."
 {¶ 15} Under her sole assignment of error, Bigham contends that the court's finding of the existence of a partnership is against the manifest weight of the evidence. We disagree.
 {¶ 16} R.C. 1775.05(A) defines a partnership in part as "an association of two or more persons to carry on as co-owners a business for profit[.]" A partnership has further been defined as, "`* * * a contract of two or more competent persons to place their money, effects, labor, and skill * * * in lawful commerce or business, and to divide the profit and bear the loss in certain proportion.'" Bouslough v.Shingledecker (1953), 97 Ohio App. 329, 336; see, also, Rumford Ins.Co., Inc. v. Wack, 6th Dist. No. L-84-251, 1985 Ohio App. LEXIS 5819, at 5. A partnership contract is not required to be in writing, but may "be proven by showing acts and conduct of the parties from which the fact may be inferred that the parties have agreed to become partners." Rumford, at 6, citing Bouslough, at 338.
 {¶ 17} We note that this case proceeded as a small claims matter. The trial was recorded on videotape and the audio portion was transcribed by a certified court reporter, and is a part of the record before this court. In a small claims action, the procedural rules are somewhat relaxed to accommodate those individuals who chose to represent themselves.
 {¶ 18} A review of the record indicates the following evidence was presented at the trial. Brewster testified that he and Bigham entered into a verbal agreement to become partners in a foal to be born of Bigham's mare, to "make a little money." Testimony further established that the parties both contributed to the expenses of the breeding. Brewster initially paid the $750 stud fee, $113 in shipping fees for the semen, and Bigham paid the "vet bills to get this mare bred for the foal."
 {¶ 19} Brewster testified that the parties agreed to a "fifty-fifty" split when the foal was born, and either party could "buy the other party out" of any interest in the foal, by paying the sum of $1,500 to the other party.
 {¶ 20} In contrast, Bigham denied that there was a partnership agreement regarding the foal. In support of her claim, Bigham produced a copy of the breeding contract executed between Bigham and the stallion owner for the sum of $750. However, Bigham admitted that it was Brewster who located the stallion owner in Florida, and handled all dealings regarding the breeding transaction. Further, it was undisputed that Brewster initially paid the $750 stud fee to the owner of the stallion, which Bigham later reimbursed to Brewster when she removed the foal from Brewster's barn on March 1, 2004.
 {¶ 21} Two witnesses, Katie Brooks ("Brooks"), and Debbie Palobeis ("Palobeis"), both testified that they were aware of the arrangement between Bigham and Brewster. Brooks, Bigham's step sister, testified that Bigham told her "* * * the partnership was to buy each other out was $1500."
 {¶ 22} Palobeis testified that "[w]e all discussed this. We are very close in the barn. * * * We discussed that "it was $1500 to buy each other out. That was the partnership. So I was interested in it because I also have a mare that I was considering breeding and working with Tom on."
 {¶ 23} In conflicting testimony, Bigham denied ever discussing any partnership agreement with either Palobeis or Brooks. At the trial, Bigham did not present any witnesses, or ask any questions of Brewster or any other witnesses.
 {¶ 24} Based upon the evidence presented, the court, as the judge of credibility of the witnesses, had the right to believe the testimony of Brewster, Palobeis, and Brooks. Therefore, we cannot conclude that the judgment of the court was against the manifest weight of the evidence or that the court abused its discretion in refusing to grant a new trial. Upon all of the circumstances of this small claims case, the court's decision was supported by competent, credible evidence. Accordingly, Bigham's sole assignment of error is without merit. The judgment of the Painesville Municipal Court is affirmed.
O'Neill, J., and Grendell, J., concur.
[1] Upon review of the record, we found that the appellant's first name is spelled differently throughout the pleadings. For the purposes of this appeal, "Jamie" will be spelled consistent with its spelling in the original complaint.
[2] The trial court issued a nunc pro tunc judgment entry on November 24, 2004 clarifying its earlier June 1, 2004 judgment entry, to properly identify the parties as the plaintiff and defendant.